UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| PAUL E. BURGESS, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-07-25 |
| | § | |
| MICHAEL ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court are Plaintiff Paul Burgess's Motion for Summary Judgment (Dkt. #19) and Defendant, Michael J. Astrue, the Commissioner of the Social Security Administration's ("Commissioner") Motions for Summary Judgment (Dkt. #s 9 & 25).[1] After considering the motions, the briefs, the entire record and the applicable law, the decision of the Commissioner is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

### Standard of Review and Applicable Law

The court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n.2 (5th Cir. 1999)).

---

[1] The Commissioner submitted a second motion for summary judgment after relevant records from the administrative proceeding were filed with the Court. Those records were inadvertently omitted from the initial filing of records.

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

A claimant is disabled and entitled to benefits if the individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2) a claimant will not be found to be disabled unless he has a "severe impairment;"

(3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4) a claimant who is capable of performing work he has done in the past must

2

    be found "not disabled;" and

(5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520(b)-(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

  To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) (quoting *Rhynes v. Califano*, 586 F.2d 388, 389-90 (5th Cir. 1978)). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment that the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Johnson*, 612 F.2d at 997. By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing the burden on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The analysis stops at any point in the five step process upon a finding that the

claimant is or is not disabled.  *See Greenspan*, 38 F.3d at 236.

## Factual and Procedural Background

Plaintiff filed an application on April 11, 2003 for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A), respectively.[2] He alleged disability due to cervical disc damage since December 21, 2002.[3] Plaintiff's application was denied at the initial and reconsideration levels of administrative review.[4] Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on August 2, 2005. At the hearing, Plaintiff was represented by counsel, and Plaintiff testified, as well as Vocational Expert ("VE") Don Marth.[5]

At the time of the hearing, Plaintiff was 42 years of age, with a high school education and past work experience as an equipment operator, ship laborer, driver, and construction fabricator.[6] On May 4, 2000, Plaintiff underwent a surgical cervical discetomy to correct cervical damage suffered from a work accident.[7] Plaintiff alleged that he continued to suffer severe pain, depression and anxiety after the surgery.  The Gulf Bend MHMR Center has treated Plaintiff for his depression for the past four years.  A Gulf Bend staff member visits Plaintiff at his home once a week to

---

[2] Tr. 66. "Tr." refers to the administrative transcript filed with the Court.

[3] The date of onset for the instant disability claim is one day after an unfavorable administrative decision denied Plaintiff's previous disability benefits application. Tr. 414.

[4] Tr. 39, 48.

[5] Tr. 406.

[6] Tr. 415.

[7] Tr. 110–11, 419.

4

monitor his medication and behavior.[8]

Plaintiff has looked for work in previous years.[9] Sometime in 2001 or 2002, he worked as a part-time kitchen helper/bartender for almost a year at the Victoria Country Club. He generally worked from 10:00 a.m. to 2:00 p.m.[10] He quit the job when he was unable to meet the hour requirements of the employer. He also threw newspapers thereafter for about 6 months. He would pick up around 100 newspapers that had been rolled for him, and he would throw them from his car at his own pace. He quit this job because it was getting too strenuous.[11] He generally picked the papers up around 2:30 a.m. and would finish the delivery by 6:00 a.m.[12] After quitting the newspaper route, he did not look for any other jobs because wife was working and he had to stay home to take care of their 19 year old handicapped son.[13] As a caretaker, he feeds his son, occasionally drives him to appointments, and gives him breathing treatments.[14] Plaintiff testified that he takes care of him during the day, but his wife dresses, prepares food for and bathes their son.[15]

The VE testified about Plaintiff's past work history, which always involved some physical

---

[8] Tr. 418.

[9] Tr. 421.

[10] Tr. 421–22.

[11] Tr. 423.

[12] Tr. 424.

[13] Tr. 425.

[14] Tr. 428.

[15] Tr. 426.

5

labor of a skilled or unskilled nature.[16] The ALJ posed the following hypothetical to the VE to determine if Plaintiff was capable of performing any substantial gainful activity:

> [A]ssume an individual who can lift up to 10 pounds on frequent basis, up to 20 pounds on an occasional basis, should not be required to do any frequent stooping, crouching, crawling, kneeling, posture type activities, should not be required to have frequent exposure to heights or dangerous equipment, and further, would have [a] number of mental, moderate mental limitations, and these are as follows, a moderate limitation in the ability to understand and carry out detailed instructions, moderate limitation in maintaining concentration and attention for an extended period of time, moderate limitation in the ability to work in proximity to others without being distracted by them, a moderate limitation in the ability to interact appropriately with the general public, and finally, a moderate limitation in the ability to accept criticism and respond appropriately to supervisors. With those physical things and those moderate mental limitations, would any of the past work or would any work occupations be possible for a person of [Plaintiff's] age, work experience and those overall physical and mental limitations?[17]

The VE responded that such a hypothetical person could be a paper carrier, a housekeeper or a laundry folder,[18] and that such jobs exist in large numbers in the national and regional economies.[19] The ALJ then posed an amended hypothetical, changing the profile to a sit/stand option, no requirement to climb ladders, ropes or scaffolds, and no more than occasional lifting of the arms over the head.[20] He asked how these additional factors would affect work performance, to which the VE replied that the sit/stand option may preclude the hypothetical person from performing the jobs previously mentioned, but such a person would be able to perform the jobs of an assembler of small products, a packager, or a grader/sorter. These particular jobs also exist in large numbers in

---

[16] Tr. 432.

[17] Tr. 433.

[18] *Id.*

[19] Tr. 434.

[20] *Id.*

the national and regional economies.[21]

Finally, the ALJ posed his final hypothetical question. Keeping all of the above mentioned physical limitations, how would the VE's opinion change, if the following mental limitations were changed? The new hypothetical person would have marked limitations in his ability to carry out simple instructions, extreme limitation in judgment on simple work-related questions, moderate limitation on simple work, marked limitation in ability to demonstrate reliability, marked limitation in ability to interact appropriately with supervisors, extreme limitation in ability to interact with co-workers, marked limitation in ability to respond appropriately to work pressures in usual work setting, and marked limitation in ability to respond appropriately to changes in a routine work setting.[22] Under these circumstances, the VE found that such limitations would "interfere with the persistence and pace associated with substantial gainful activity in the competitive labor market and would render such an individual, in my opinion, unemployable in any capacity at this point."[23] The hearing concluded with no further questioning of the VE by Plaintiff's counsel.

On February 21, 2006, the ALJ issued his decision, finding that Plaintiff was not disabled.[24] The ALJ evaluated the evidence and hearing testimony in the requisite five step sequence to determine if Plaintiff was disabled. First, he found that claimant had not performed substantial gainful work since the alleged onset date of his disability.[25] Further, the ALJ determined that the medical evidence showed that claimant had the "medically determinable, severe impairments of

---

[21] Tr. 435.

[22] Tr. 436.

[23] *Id.*

[24] Tr. 13.

[25] Tr. 17.

depression and status-post injury of and surgery on the cervical spine."[26] However, claimant's impairments did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.[27]

Next, finding that a determination of disability could not be based on medical considerations alone, the ALJ went on to consider the Plaintiff's residual functional capacity ("RFC") to perform past relevant work or other work existing in the economy.[28] The ALJ reviewed Plaintiff's testimony and the medical evidence and determined that the record did not support Plaintiff's contention that he was disabled from all work activity. His testimony that he had worked as a kitchen helper/bartender and newspaper courier since the onset date of his disability detracted from Plaintiff's contention that he was unable to perform any work activity.[29] Both of these jobs required some physical exertion, which he was able to perform for a total of eighteen to twenty months. Plaintiff's total inability to work was further undermined by his testimony that he is the caretaker of his disabled son, and must drive him around, take care of his basic needs and help with his medical treatment.

The medical evidence also did not support claimant's allegations of total disability due to physical pain and mental impairment. Dr. Luci Nguyen's 2003 physical examination of Plaintiff noted that he had normal gait with no difficulty getting onto the examination table.[30] Dr. Bouton also

---

[26] *Id.*

[27] Tr. 18.

[28] Residual functional capacity is what the claimant can still do despite limitations due to his impairments. 20 C.F.R. § 416.945.

[29] Tr. 19.

[30] *Id.*

performed a psychological examination of Plaintiff in 2004, finding the Plaintiff demonstrated fluid, relevant, coherent and goal-oriented thought processes. The Gulf Bend MHMR records indicated that his depression was largely situational and due to his frustration over his probation, his perceived inability to work and his lack of success in obtaining disability benefits, and it was often noted that medication resulted in improvement of his depression.[31] The ALJ concluded that the medical evidence and testimony did not support Plaintiff's allegations regarding the severity of his pain and limitations. Thus, the ALJ found Plaintiff retained a residual functional capacity to "lift and carry a maximum of ten pounds frequently and twenty pounds occasionally; to stand and/or walk for no more than six hours per eight-hour work day; to sit for no more than six hours per eight-hour work day; with stooping, crouching, bending, kneeling and crawling limited to a less-than-frequent basis."[32] Further, the ALJ found moderate limitations in claimant's ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination wit or proximity to others without being distracted by them, to interact appropriately with the general public, and /or to accept instructions and respond appropriately to criticism from supervisors. The ALJ based his determination on the symptoms of Plaintiff, including his subjective complaints of pain, and the objective medical evidence.

At step four, the ALJ determined that the Plaintiff was unable to perform his past relevant work based on his RFC. Finally, the ALJ considered if the Plaintiff could perform other occupations based on his age, education, work experience and RFC. Utilizing the Medical Vocational Guidelines as a framework, the ALJ concluded that Plaintiff was capable of performing a significant range of

---

[31] Tr. 161, 164.

[32] Tr. 19–20.

light work.[33] The ALJ accepted the VE's testimony that work existed in significant numbers in the national and regional economies for which Plaintiff had the capacity to perform, even with his physical and mental limitations. As such, he ruled that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review, making the ALJ's opinion the final decision of the Commissioner. Plaintiff filed his appeal of the decision pursuant to 42 U.S.C. § 405(g) in this Court on February 21, 2007. Generally, Plaintiff contends that the ALJ's determination was not supported by substantial evidence and was based on an erroneous application of the law to the facts. He also specifically alleges that the ALJ erred at Step Three because he did not identify the medical listings he considered or discuss with particularity the evidence upon which he based his finding that Plaintiff did not meet or medically equal any of the medical listings. Additionally, Plaintiff argues the ALJ erred by not finding his other mental impairments to be severe, by not taking into account the severity of his mental impairments on his functional capacity and by failing to give his treating physician's opinions adequate weight. Plaintiff also seeks to introduce new evidence, which was not reviewed by the ALJ.

**Analysis**

While Plaintiff maintained he was completely unable to work based on the pain he continued to suffer after surgery, the medical evidence and his own testimony indicated otherwise. The standard for evaluation of subjective symptoms such as pain is found at 20 C.F.R. § 416.929 and is explained further in SSR 96-7p. In summary, even if a claimant's subjective symptoms are not fully justified by objective medical evidence, the ALJ cannot disregard them but must make a credibility finding based on the entire record. *See* 20 C.F.R. § 416.929 (outlining the appropriate considerations for determining the credibility of claimant's subjective symptoms). The ALJ has discretion to

---

[33] Tr. 21.

determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Subjective complaints of pain must be corroborated, at least in part, by objective medical evidence. *Id.* It is the role of the ALJ, not this court, to resolve evidentiary conflicts. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986) (stating that an ALJ's findings regarding the credibility of subjective symptom testimony is "entitled to considerable judicial deference").

Substantial evidence supports the ALJ's decision that, given Plaintiff's physical and mental limitations, he still retained the capacity for substantial gainful activity. For example, in March 2001, Dr. Christopher Chaput, a neurological surgeon, performed a complete post-surgery neurological and orthopedic exam on Plaintiff. The patient exam showed that he was "progressing well" although he complained of a "rather bizarre symptom complex" which "bears no correlation with known anatomy or physiology."[34] Dr. Chaput further noted that Plaintiff seemed reluctant to accept the Texas Rehabilitation Commission's offer to retrain him for a sedentary position. His final impression found Plaintiff to have an "ego-syntonic pain syndrome so fixated that this patient will never be convinced that he is physically well. His psychological state is such that expenditure of further funds on rehabilitation or retraining is futile," and he had "serious reservations about his psychological state and [felt] that any further evaluation should not be medical in nature but should be psychological." Lastly, he stated Plaintiff was capable of performing "virtually any job except for the very most stressful and heavy."[35] Several months after surgery, Dr. Keith Norvill also noted that he recommended physical therapy and medication, but the Plaintiff refused.[36]

---

[34] Tr. 119–20.

[35] *Id.*

[36] Tr. 121.

In 2004, a medical vocational decision guide was completed, finding that Plaintiff had a RFC to perform a full range of medium work. Specifically, he was able perform past relevant work, including a garbage collector driver as described in the Dictionary of Occupational Titles.[37] Dr. John Durfor, a general practitioner, also completed an RFC assessment based on Plaintiff's physical abilities. He determined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand or walk with normal breaks for six hours of an eight hour work day; sit about six hours of an eight hour work day; and push and/or pull without limitation. He also noted that "the alleged limitations are not fully supported by evidence in file."[38]

Moreover, around the time of the alleged onset of his disability, Plaintiff worked part-time as a kitchen helper/bartender and newspaper delivery person for over a year, which required some level of physical and mental exertion. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Further, his ability to take care of his son belied his assertion that he was unable to perform any physical activity. He was able to drive, take care of his son's needs, and perform household chores.[39] He told Dr. Arthur Bouton in January 2004, during a psychological exam that he tries to make meals, do household chores, and his daily routine revolves around meeting his son's needs.[40] *See Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) (per curiam) (finding that any inconsistencies between a claimant's testimony about his limitations and his daily activities is relevant in evaluating the claimant's credibility).

---

[37] Tr. 106.

[38] Tr. 309.

[39] Tr. 87.

[40] Tr. 280–84.

Here, the ALJ evaluated Plaintiff's testimony in light of all the objective medical evidence and concluded that the evidence did not support his allegation of disabling pain, but rather supported the conclusion that, despite his pain, Plaintiff retained the ability to perform a full range of light work. Therefore, Plaintiff's daily activities and work activity, as well as the medical evidence contradicted Plaintiff's allegations of total disabling pain. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (noting it was within the discretion of the ALJ to discount claimant's complaints of pain based on the medical reports combined with her daily activities and her decision to forego certain medications).

The Plaintiff's allegations of debilitating depression were likewise undermined by the medical records. In 2003, Dr. Farrell Hillman performed a Psychiatric Review, determining that Plaintiff suffered from Affective Disorder, but that it was not severe.[41] He concluded that Plaintiff had a mild degree of limitation in restrictions of daily activities, maintaining social functioning and maintaining concentration, persistence or pace.[42]

Another Psychiatric Review that was performed one year later by Dr. Richard Alexander came to largely the same conclusions that Plaintiff only had a mild degree of limitation. The evaluation did, however, report a moderate limitation in difficulty in maintaining concentration, persistence or pace.[43] Dr. Alexander also completed a Mental Residual Functional Capacity Assessment, and found Plaintiff was moderately limited in his ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination or proximity with others without

---

[41] Tr. 144.

[42] Tr. 154.

[43] Tr. 296.

13

being distracted by them; ability to have sustained concentration and persistence; ability to interact with general public; and ability to accept and respond appropriately to criticism from supervisors.[44] In conclusion, Dr. Alexander concluded that "claimant can understand, remember, and carry out detailed but no complex instructions, make decisions, attend and concentrate for extended periods, accept instruction, and respond appropriately to changes in a routine work setting."[45]

The notes recorded by the Gulf Bend staff member who visited Plaintiff at his home regularly also reflect only moderate mental limitation. Several times it was noted that medication was helping alleviate the symptoms of Plaintiff's depression and indicated his mood was likely situational due to Plaintiff's dissatisfaction with his probation, work status and inability to obtain disability benefits.[46] *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir.1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). Additionally, in 2004, Dr. Arthur Bouton performed a psychological exam on Plaintiff and noted that his "thinking was fluid, relevant, average in pace, coherent and goal-directed,"[47] and he had no cognitive impairment. Thus, the medical evidence demonstrates that Plaintiff's mental condition was not disabling.

Plaintiff contends the ALJ erred because he did not find that Plaintiff suffered from other severe mental impairments, specifically personality disorder and post traumatic stress disorder. The ALJ discussed the medical evidence relating to the disabilities cited by Plaintiff and based on the vast majority of medical findings, concluded that Plaintiff only had the "medically determinable,

---

[44] Tr. 300–02.

[45] *Id.*

[46] Tr. 161.

[47] Tr. 280–82.

14

severe impairments of depression and status-post injury of and surgery on the cervical spine." The ALJ recognized that, at times, Plaintiff had been diagnosed with personality disorders, however, he properly determined that these conditions were not severe.[48] *See Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) ("An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.").

Plaintiff maintains that the ALJ also committed error because Plaintiff's RFC assessment did not adequately consider the impact of his mental impairments on his functional ability as required by SSR 96-8p. The ALJ assessed Plaintiff's RFC, specifically noting and considering the dictates of SSR 96-8p, i.e. what is the maximum the claimant can do despite the limitations or restrictions posed by the medically determinable impairments.[49] After properly considering Plaintiff's subjective complaints and the opinions of treating and examining medical sources, the ALJ fulfilled his duty in determining Plaintiff's RFC. The RFC assessment made by the ALJ included both Plaintiff's physical and mental limitations. Thus, the ALJ's analysis of Plaintiff's mental functioning demonstrates that the ALJ properly followed the Commissioner's regulations.

Plaintiff, moreover, asserts the ALJ failed to accord adequate weight to the opinion of his treating physician, Dr. Jerome Tilles. It is well settled that although the "opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability," such evidence is not conclusive; rather, the ALJ bears "the sole responsibility for determining the claimant's disability

---

[48] Tr. 17–18. *See* Tr. 144, 485–86, 489–90 each diagnosing Plaintiff with major depressive disorder.

[49] Tr. 18.

15

status." *Greenspan v Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ discussed several of the treating and non-treating physicians' opinions which contradicted Plaintiff's subjective complaints of disabling symptoms. Based on the record as a whole, he found that Dr. Tilles' findings were inconsistent with the other medical evidence. Specifically, the ALJ "in particular, . . . considered the medical opinion submitted on July 20, 2005 regarding the claimant's limitations due to his mental impairments. However, [he found] the degree of restriction indicated in this assessment to be excessive in light of the rest of the medical evidence, with which it is inconsistent, and . . . therefore accorded this assessment little weight in [his] determination."[50] Thus, contrary to Plaintiff's assertion, the ALJ specifically considered Dr. Tilles' reports and articulated his reasons for giving his medical opinions little weight.

Despite substantial support for the ALJ's determination, the Court finds that the ALJ did not apply the appropriate legal standards at Step Three. Step Three requires the ALJ to determine if a claimant's impairment meets or is equivalent to an impairment listed in appendix 1 of the social security regulations ("Listing"). At Step Three, the ALJ simply made the finding that "[b]ased on the medical records, I find that the claimant's severe impairments do not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations 4."[51] Recently, the Fifth Circuit held bare conclusions that a claimant's severe impairments did not meet or medically equal a Listing was not sufficient for judicial review. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). By the terms of 42 U.S.C. § 405(b)(1), the ALJ was required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation. However, the ALJ in *Audler* did not identify the listed impairment for which the claimant's symptoms failed to qualify and did

---

[50] Tr. 20.

[51] Tr. 18.

16

not provide any explanation as to how she reached the conclusion that claimant's symptoms were insufficiently severe to meet or equal any listed impairment. Thus, the Fifth Circuit remanded the case, finding that the ALJ's failure to set out the bases for her decision at Step Three affected the claimant's substantial rights. *Id.* Like the ALJ in *Audler*, the ALJ here summarily found that Plaintiff did not meet or equal any of the Listings without identifying the Listing he was referring to or adequately explaining the reasons for his determination.

At the hearing, Plaintiff argued he qualified for the Listings as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04[52] and 1.04.[53] Plaintiff presented evidence that he may qualify

---

[52] Listing 12.04 addresses "affective disorders" and provides that a claimant is disabled if he has a sufficiently severe "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." The listing states that "[t]he required level of severity for these disorders is met when the requirements in both [subsections] A and B are satisfied." These subsections are as follows:
    A. Medically documented persistence, either continuous or intermittent, of one of the following: (1) Depressive syndrome characterized by at least four of the following: (a) Anhedonia or pervasive loss of interest in almost all activities; or (b) Appetite disturbance with change in weight; or (c) Sleep disturbance; or (d) Psychomotor agitation or retardation; or (e) Decreased energy; or (f) Feelings of guilt or worthlessness; or (g) Difficulty concentrating or thinking; or (h) Thoughts of suicide; or (i) Hallucinations, delusions or paranoid thinking. . . . ; AND
    B. Resulting in at least two of the following:(1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or (4) Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

[53] Listing 1.04 provides a claimant is disabled if he suffers a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
    A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

for one or more of these Listings.[54] However, because the ALJ did not discuss any specific Listing and the requirements thereof, it is impossible for the Court to determine if his decision is based on substantial evidence. In this regard Plaintiff's substantial rights were affected by the ALJ's failure to explain his adverse Step Three determination, and remand is warranted in this case.

Lastly, the Plaintiff seeks a remand so that the Commissioner can consider new evidence originally submitted by Plaintiff to this Court. Plaintiff submitted a Notice of Award of benefits from the Social Security Administration dated September 4, 2007 based upon a subsequent application for benefits and a consultative evaluation performed by Dr. Sean Connolly on June 22, 2007. The Commissioner maintains the evidence is not material because it does not relate to the relevant period of time applicable to the instant application for benefits under review, and Plaintiff has failed to demonstrate good cause for the late submission. Under § 405(g), "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The new evidence must also pertain to the time period for which the disability benefits were denied, and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995) (internal quotations omitted). New evidence is material if there is a reasonable probability that such evidence would alter the Commissioner's decision. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

First, the award of disability benefits stemming from a subsequent benefits application has

---

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

[54] *See* Tr. 173–76, 289, 489, 529, 539, 581–82 for findings related to Listing 12.04. *See* Tr. 127, 451, 467, 469 for findings related to Listing 1.04.

no bearing on this case. *Cardenas v. Apfel*, 213 F.3d 639 (5th Cir. 2000) (per curiam) ("Subsequent determination of disability on a different application for benefits is not material to this proceeding."). As to Dr. Connolly's report, this new medical evidence is not material because it does not relate to the relevant time period. *See Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). Dr. Connolly's examination was taken far outside of the period in which Plaintiff applied for or was denied benefits, and Plaintiff has not demonstrated that his current mental disability did not subsequently develop after his initial application or that it is not the result of the deterioration of a condition that was not previously disabling. The reported findings derive largely from Plaintiff's own recitation of his past medical history and the few medical records Dr. Connolly did review are likewise outside the relevant period of time applicable to the denial of benefits under review here. Thus, Dr. Connolly's report fails to provide a reasonable possibility for changing the outcome of this disability determination. *See Leggett*, 67 F.3d at 567 (examination after the relevant time period not basis for remand when claimant fails to prove that disability was not the result of the deterioration of a condition that was previously not disabling). The appropriate action regarding this new evidence is the option that Plaintiff has already chosen, that is to use this evidence as the basis for a new disability application. *Id.*

Plaintiff has also failed to show good cause for his failure to obtain this evidence previously. *See Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989). To demonstrate "good cause," the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (reviewing good cause). Plaintiff's only explanation for not submitting Dr. Connolly's report until now is that it was not in existence prior to the ALJ's decision. The date of the report obviously reflects that the mental examination was performed over a year after the Commissioner's decision became final. The mere fact that a

medical report is of recent origin, however, is not enough to meet the good cause requirement. *Leggett*, 67 F.3d at 567; *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987).

## Conclusion

For the foregoing reasons, the Commissioner's decision is REVERSED, and the matter REMANDED for further proceedings in accordance with this opinion.

It is so ORDERED.

SIGNED this 15th day of July, 2008.

*[signature]*
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE